**Signed and Filed: December 27, 2010**

_____
 **DENNIS MONTALI**
 **U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 09-33549DM |
| RAY K. SHAHANI, | ) |
| | ) |
| Debtor. | ) Chapter 11 |
| _____) | |
| RAY K. SHAHANI, individually and as) | Adversary Proceeding |
| TRUSTEE OF THE 888 TRUST DATED ) | No. 10-3022DM |
| AUGUST 10, 2006, ) | |
| | ) |
| Plaintiff, ) | |
| | ) |
| v. ) | |
| | ) |
| UNITED COMMERCIAL BANK, et al., ) | |
| | ) |
| Defendants. ) | |
| _____) | |

MEMORANDUM DECISION FOLLOWING TRIAL

I. INTRODUCTION.

Plaintiffs Ray K. Shahani and the 888 Trust (together "Shahani") brought this action for breach of a construction loan agreement, wrongful foreclosure, damages and other relief in the San Francisco Superior Court against East West Bank as assignee from the FDIC as Receiver for United Commercial Bank (both referred to herein interchangeably as "Bank") and other defendants. After Ray K. Shahani filed Chapter 11 on November 11, 2009, he removed it to this court on February 24, 2010.

The court issued a Temporary Restraining Order and later on

May 10, 2010, a Preliminary Injunction (the "Injunction") prohibiting Bank from disposing of the real property at 888 Airport Blvd. in Burlingame, CA (the "Property").

The matter was tried to the court on September 20 & 21, 2010, and thereafter the parties submitted simultaneous post-trial written arguments. The court took the matter under submission and on November 8, 2010, issued its Preliminary Ruling Following Trial. In that ruling the court noted that pivotal to the resolution here is the issue of whether Shahani or Bank first breached the March 16, 2007, Construction Loan Agreement between United Commercial Bank and the 888 Trust (the "CLA"). If Shahani did, the Bank's non-performance thereafter is excused; if Bank did, Shahani might well be entitled to set aside the foreclosure sale or recover damages.

Shahani thereafter asked to submit further argument and the court afforded both sides an opportunity to do so. Having considered those additional arguments, the court adheres to its preliminary ruling and will enter judgment in favor of Bank.

II. DISCUSSION.[1]

Under the CLA, Bank loaned $2,025,000 to pay off an existing loan on the Property and finance the construction of an office building on it. Bank's commitment under the CLA was to finance the completion of what the parties have described as the warm shell of the building, not the final improvements.

The loan was evidenced by a promissory note and secured by a deed of trust with the usual terms for enforcement in the event of

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

a default.  The original due date of the note was April 5, 2008.

During the course of construction Shahani chose to develop and construct more improvements on the Property than were contemplated by the CLA.  He advanced $533,000 for those additional improvements.  Shahani selected Scott General, Inc. ("Scott") as the general contractor on the project.  Bank selected an independent third party inspection company, Cardinal Consulting, Inc. ("Cardinal") to monitor progress on the project, including verifying percentages of completion in response to periodic draw requests.

By May, 2008, Scott became concerned about Shahani's ability to pay for the additional improvements he was adding beyond those covered by the CLA.  When Shahani was unable to supply Scott with evidence of an ability to pay for those improvements, Scott abandoned the project on May 22, 2008, asserting that it was owed approximately $196,000 in unpaid fees and costs.

When presented with Draw Request No. 10, Cardinal reviewed the progress of the project, including the difficulties with Scott that included a mechanic's lien Scott recorded against the Property on June 5, 2008.  Cardinal recommended responding to Draw Request No. 10 by having Bank release an amount limited to approximately $118,600, or roughly 60% of that claimed by Scott in its mechanic's lien.[2]  Shahani contends that Bank breached the CLA by denying payment of Draw Request No. 10 and that had it honored that request he could have satisfied Scott and saved the project. Bank countered by arguing that Scott's abandonment on May 22,

---

[2] Scott recorded a second mechanic's lien a few weeks thereafter.

-3-

constituted an event of default under section 25.18 of the CLA, namely if its borrower ceases construction on the Property. Further, section 25.16 of the CLA provides the an event of default occurs if any default continues beyond any applicable cure period. Bank also contends that Scott's recording of the mechanic's liens against the Property constituted two independent defaults under section 25.10 of the CLA. Shahani contends that had Scott been paid the $118,600, it would not have pursued its mechanic's liens remedies.[3] The court rejects this argument as unfounded and pure speculation.

Shahani also contends notwithstanding the problems with Scott and the recorded mechanic's liens, that Bank extended the maturity date of the note from October 5, 2008, until January, 2009, and thus its recording of a notice of default on January 29, 2009, was premature. Shahani relies on a December 10, 2008, e-mail from Bank officer Leonard Woolfolk ("Woolfolk") stating, "the loan is being extended through January, 2009." The court agrees with Bank that at the time of the Woolfolk e-mail, the loan was already in default and there was nothing to extend. Further, there were no contractual agreements or discussions about any definitive terms of such an extension. In any event, a few days after the Woolfolk e-mail Bank informed Shahani in writing that the amounts due under the loan were due and payable and Shahani expressed no concern about any purported extension of the loan.

Bank recorded its notice of default on January 29, 2009, just two days prior to the date Shahani contends was an extended

---

[3] Shahani ultimately settled with Scott in August, 2009.

-4-

maturity of the Note.  Because the sale did not occur until October 1, 2009, Shahani had ample time to pay off the entire amount due under the loan as permitted by California Civil Code § 2924(f).

Following trial the Bank appears to have abandoned its contentions about Shahani's abandonment of the project, and with good reason.  Woolfolk was crystal clear in his belief that Section 25.18 applied, and repeatedly stressed that Scott's walking off the project was a breach by Shahani.  It is crystal clear that he was incorrect.  Had Shahani terminated Scott, Woolfolk would have been correct, but that is not what happened. For section 25.18 to apply, Shahani would have had to abandon the project.  He did not.  Thus there were not two extant breaches oof the CLA as of June 5, 2008; there was one, the recorded mechanic's lien, but it was material enough to excuse Bank from funding Draw Request No. 10.  The second mechanic's lien added another breach of the CLA.

Shahani cannot avoid or defend those breaches.  As persuasively argued by Bank in its post-trial brief, it would require too much speculation for the court to conclude that had Bank paid approximately $118,000 on June 6 (or June 10, recognizing that Bank was entitled to a response to a June 3 e-mail asking for more details regarding how Shahani was dealing with Scott) that Scott would have removed its first lien and not recorded its second one.  While perhaps not Shahani's fault (except to the extent he could not provide Scott with financial assurances), Scott's conduct led to the conditions described in Exhibits A and F (see Bank's post-trial brief at 5:9-19) excusing

Bank's further performance.

On other issues presented, the court agrees with Bank. The January 29, 2009, Notice of Default was not premature. Bank did not violate a duty of good faith and fair dealing. Bank's offer to accept a discount in full satisfaction of its note upon Shanhan's refinancing of the project through Private Funding Solutions, Inc., by a deadline expired before the refinancing could be accomplished, and Bank was under no legal obligation to extend that deadline. The exchange of e-mails and voicemail messages in the final hours before the sale did not invalidate the foreclosure sale and had no effect on the outcome.

Because the court is ruling in favor of Bank it does not need to address whether Debtor, Ray K. Shahani, has standing to prosecute this action when the Property was owned by the 888 Trust.

Bank is entitled to a dissolution of the Injunction and entry of a judgment in its favor for the reasons set forth in this memorandum decision. Each side should bear their own costs. Bank's counsel should serve and upload such a judgment, and comply with B.L.R. 9021-1.

\* \* \* END OF MEMORANDUM DECISION \* \* \*